IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| EARL SCOTT LLOYD, | ) | Civil No. 05-3032-AA |
|     Plaintiff, | ) | OPINION AND ORDER |
|   vs. | ) | |
| UNITED STATES MARSHALS SERVICE, UNITED STATES DEPARTMENT OF JUSTICE, BY AND THROUGH HONORABLE ALBERTO GONZALES, ATTORNEY GENERAL, AND THE UNITED STATES OF AMERICA, | ) | |
|     Defendants. | ) | |

AIKEN, Judge:

    Earl Scott Lloyd, a former United States Marshals' Service Court Security Officer (CSO) employed by AKAL Security, brought this action against the Unites States Marshals Service (USMS) alleging wrongful termination. Upon consultation with

defendants, Lloyd agreed to dismiss claims for violation of the Age Discrimination Employment Act, breach of contract, Back Pay Act, and concert of action. Remaining are Lloyd's due process and Rehabilitation Act of 1973 claims.

Defendants filed a Motion to Dismiss, or in the Alternative Motion for Summary Judgment. Defendants' motion is based on prior rulings by Judge Carter in the class action <u>Strolberg v. AKAL, Inc. v. United States Marshals Service</u>, Case No. 03-0004-S-DOC (D. Idaho 2004), in which Lloyd was a named plaintiff. For the reasons stated below, defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

In July 2002, the United States Marshals Service (USMS) issued a letter to AKAL Security notifying them that contractors and employees did not have a right of appeal when the USMS determined a CSO was medically disqualified. On October 30, 2002, the USMS terminated Lloyd from his employment as a CSO in Medford, Oregon, based on a Judicial Security Division Reviewing Physician's judgment that Lloyd was not medically qualified to perform essential functions of the job.

On January 20, 2003, Lloyd joined in the class action <u>Strolberg v. AKAL, Inc. v. United States Marshals Service</u>, Case No. 03-0004-S-DOC (D. Idaho 2004), on behalf of as many as 4,500 CSOs nationwide alleging the USMS discriminated against them as a

class in violation of the Rehabilitation Act, Age Discrimination in Employment Act (ADEA) and American with Disabilities Act (ADA). The Strolberg case was not certified as a class action, and after a flurry of motions, the case, which at its peak included 78 plaintiffs, was reduced to 25 plaintiffs including Lloyd, with only the ADEA and Rehabilitation claims remaining at issue.

On January 19, 2005, Judge David Carter dismissed with prejudice all ADEA causes of action against defendants, and denied as futile plaintiffs' request for a "technical amendment" to add a due process claim. See Order at p. 4-7 (January 19, 2005). Judge Carter also determined that CSOs were indeed federal employees for purposes of stating a claim under Section 501 of the Rehabilitation Act. Finding, however, that Lloyd and 14 other plaintiffs had not initiated an EEO process as required under Title VII at the time of the action, Judge Carter dismissed without prejudice their Rehabilitation Act claims as premature. Id. at 14-16. Judge Carter then granted summary judgment for defendants as to the Rehabilitation Act claims of the remaining 10 plaintiffs, those who were not dismissed with Lloyd's group, finding those 10 plaintiffs did not present triable issues of fact as to evidence of discrimination. Id. at 16-19. Those 10 plaintiffs directly appealed the entirety of the order and previous adverse rulings by Judge Carter to the Ninth Circuit

Court of Appeals. Lloyd and the 14 others whose Rehabilitation Act claims were dismissed as premature did not join in that appeal.

In the midst of the Strolberg lawsuit, on August 23, 2004, Lloyd initiated his Equal Employment Opportunity (EEO) process and, on October 1, 2004, received notice of his right to file a discrimination complaint. On October 13, 2004, Lloyd filed the discrimination complaint at bar.

On January 26, 2005, shortly after Judge Carter's Order finding CSOs to be federal employees, the EEO rejected Lloyd's discrimination complaint for lack of standing as a federal employee. Lloyd filed his Complaint with this court on April 22, 2005.

## **STANDARDS**

1. Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(6), dismissal for failure to state a claim is proper only when it appears to a certainty that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. Litchfield v. Spielberg, 736 F.2d 1352, 1357 (9th Cir. 1984), cert. denied, 470 U.S. 1052 (1985). For the purpose of the motion to dismiss, the complaint is liberally construed in favor of the plaintiffs, and its allegations are taken as true. Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983).

## 2. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive law on an issue determines the materiality of a fact. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to

Page 5 - OPINION AND ORDER

the nonmoving party. T.W. Electrical, 809 F.2d at 630. In an employment discrimination case, "if a rational trier of fact could, on all the evidence, find that the employer's action was taken for impermissibly discriminatory reasons," summary judgment for the moving party is inappropriate. Wallis v. J.R. Simplot, 26 F.3d 885, 889 (9th Cir. 1994).

3. Claim Preclusion/Res Judicata

Under the well-established doctrine of claim preclusion, a plaintiff is barred from bringing a subsequent action alleging the same claims. "For claim preclusion to apply, there must be (1) an identity of claims in the two actions; (2) a final judgment on the merits in the first action; and (3) identity or privity between the parties in the two actions." Frank v. United Airlines, 216 F.3d 845, 850 (9th Cir. 2000). Specifically, "[c]laim preclusion bars subsequent claims which could have been asserted in a prior suit between the same parties on the same cause of action." First Pacific Bancorp, Inc. v. Helfer, 224 F.3d 1117, 1129 (9th Cir. 2000) (citing Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)).

The doctrine of res judicata includes both claim preclusion and issue preclusion. Baker v. General Motors Corp., 522 U.S. 222, 233 n. 5 (1998). Claim preclusion bars all claims which could have been asserted in a prior action between the same parties, as long as the case was based on the same cause of

action and the prior suit concluded in a final judgment on the merits. International Union of Operating Engineers-Employers Constr. Indus. Pension, Welfare and Training Trust Funds v. Karr, 994 F.2d 1426, 1429 (9th Cir. 1993). "Under the doctrine of issue preclusion, a valid and final determination in one proceeding of a necessary factual or legal issue . . . may not be relitigated in a subsequent proceeding involving a party to the prior action." Dodd v. Hood River County, 136 F.3d 1219, 1224 (9th Cir. 1998).

Whether the two suits involve the same claim or cause of action requires examination of four criteria: 1) whether the two suits arise out of the same transactional nucleus of facts; 2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; 3) whether the two suits involve infringement of the same right; and 4) whether substantially the same evidence is presented in the two actions. Mpoyo v. Litton Electro-Optical Systems, 430 F.3d 985, 987 (9th Cir. 2005) (citing Chao v. A-One Med. Servs., Inc., 346 F.3d 908, 921 (9th Cir. 2003)).

**DISCUSSION**

1. Due Process Claim

In Strolberg, Judge Carter denied the 25 plaintiffs' motion to add a due process claim based on futility, reasoning that Title VII dictates that the Rehabilitation Act serves as the

exclusive judicial remedy for claims based on a federal employee's disability. Order at p. 7 (January 19, 2005)(citing Hupka v. Dept of Defense, 134 F. Supp. 2d 871, 875 (E.D. Mich. 2001)). Defendants now move to dismiss Lloyd's due process claim based on res judicata, or in the alternative, due to statute of limitations and sovereign immunity. Lloyd argues that some courts have held certain Constitutional claims can be pursued as distinct from a Title VII action, and that Judge Carter erred in not allowing the Strolberg plaintiffs' due process claim to stand alone. See Ray v. Nimmo, 704 F.2d 1480, 1485 (11th Cir. 1983); and Ethnic Employees of the Library of Congress v. Boorstin, 751 F.2d 1405, 1415-1416 (D.C. Cir. 1985).

Judge Carter, however, clearly addressed this issue in his January 19, 2005 order saying he was unconvinced by the Strolberg plaintiffs' arguments for a distinct due process claim. Order at p.7 (January 19, 2005). Judge Carter determined that the Rehabilitation Act was the exclusive judicial remedy for discrimination claims against federal employees, relying on Ninth Circuit precedent holding that even claims raising a violation of constitutional rights can be preempted by the Rehabilitation Act. See Scott v. Perry, 569 F.2d 1064, 1065 (9th Cir. 1978). Judge Carter further found that the due process claim was not a "distinct" claim from plaintiff's Rehabilitation Act claim because it merely challenged the "mechanism" by which the

discrimination occurred. Therefore, he held it could not stand as a separate non-preempted claim. Thus, Judge Carter's Order stands as a final adjudication on the same substantive matter by an identical party as brought before this court.

Moreover, this court notes that other United States District Courts have examined this issue in cases filed by former CSOs whose claims were originally dismissed with Lloyd's. Those courts have also held that res judicata applied to bar plaintiffs' due process claims. See Foster v. United States Marshals Service, Civil Action No. 5:05-CV-0091-J (N.D. Tex. 2005) and Bush v. Gonzales, 2005 WL 2218425 (D. Vt. 2005). If Lloyd disagreed with Judge Carter's ruling denying a separate due process claim, the proper recourse was to appeal to the Ninth Circuit Court of Appeals. Because he failed to do so, he cannot now relitigate the issue before this court. As the court in Foster, supra, noted, "the district court is not permitted to collaterally review the decisions of another court, and the preclusion doctrines exist to prevent precisely this brand of relitigation." Id. at 16.

Therefore, I find Lloyd's due process claim barred by res judicata, and grant defendants' motion to dismiss plaintiff's due process claim. The court notes that even if res judicata did not apply, Lloyd's complaint states his intention to withdraw his due process claim if allowed to pursue his Rehabilitation Act claim.

As this court finds below, plaintiff's Rehabilitation Act claim survives.

## 2. Rehabilitation Act Claim

Defendants next argue that Lloyd's Rehabilitation Act Claim should be dismissed on two grounds: 1) res judicata; and 2) failure to exhaust administrative remedies.

### a. Res Judicata/Claim Preclusion

Defendants assert that even if Lloyd had not argued a Rehabilitation Act theory in <u>Strolberg</u>, Judge Carter's ruling on the merits of the due process claim would preclude subsequent litigation of the Rehabilitation Act claim which arises from the same nucleus of operative facts.

I disagree and find that Judge Carter did not rule on the merits of plaintiff's Rehabilitation Act Claim. To the contrary, he ruled only that plaintiffs had not begun the administrative process by filing an EEO claim. Judge Carter noted the USMS could extend the time to file plaintiffs' claims, thus leaving the door open to Lloyd and the other 14 plaintiffs to refile their action. At the time of Judge Carter's Order, plaintiff had not received a response from the EEO. The EEO has now dismissed plaintiff's claim for lack of standing and timeliness, <u>see</u> Defendants' Ex. 111, and according to defendants, the USMS has declined to grant an extension.

In fact, if Judge Carter had ruled that plaintiffs failed to exhaust and were therefore barred from bringing their claims, that ruling would be inconsistent with his dismissal without prejudice. Lloyd filed his Rehabilitation Act claim, which the Equal Employment Opportunity Commission (EEOC) denied, finding he did not have standing as a federal employee to state a claim under the Rehabilitation Act.

Despite that determination by the EEOC, Judge Carter disagreed and held otherwise. Under the Ninth Circuit's "joint employment test," established in Lopez v. Johnson, 333 F.3d 959 (9th Cir. 2003), Judge Carter found that among other criteria, the USMS' ability to exercise direct control over the CSOs created an employment relationship. Order at p. 12 (January 19, 2005). Judge Carter held:

> If the USMS wishes to examine and disqualify individual CSOs, it must be prepared to be treated as an employer. The government cannot be allowed to structure its contracting relations so that in employment decisions it can have its cake and eat it too.

Id. at 13.

As such, the court held that CSOs employed by AKAL could state a claim under Section 501 of the Rehabilitation Act. Id. Still, Judge Carter found the claims of Lloyd and 14 others premature for failure to exhaust. In fact, Judge Carter found that plaintiffs had failed to initiate the EEO process. Therefore, he dismissed plaintiffs' Rehabilitation Act claims

Page 11 - OPINION AND ORDER

without prejudice. Id. at 14-16. I find no evidence in support of defendants' argument that res judicata applies to plaintiff's Rehabilitation Act claim. There can be no dispute that Judge Carter did not reach the merits of plaintiff's Rehabilitation Act claim. Therefore, defendants' motion to dismiss plaintiff's Rehabilitation Act claim based on res judicata is denied.

  b. Failure to Exhaust Administrative Remedies

Defendants next argue that plaintiff's Rehabilitation Act claim is barred for failure to timely exhaust administrative remedies. Plaintiff asserts his right to appeal the USMS/EEOC denial of his Rehabilitation Act claim, based on the agency's failure to provide for equitable tolling and equitable estoppel.

Filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982).

Defendants argue in a footnote for issue preclusion as to plaintiff's defense of equitable tolling. Judge Carter dispositively addressed the issue noting that tolling ceases once a claimant retains counsel, and that the fact the case was filed as a class action did not shelter plaintiff from timing requirements. Id. at 15-16. Further, Judge Carter refused to allow plaintiffs to "piggyback" their claims on those who had

already initiated the EEO process. Id. Instead, Judge Carter left open the opportunity for Lloyd and the 14 other plaintiffs to initiate their own proceeding if granted an extension by the EEOC or USMS. As such, Lloyd's arguments regarding equitable tolling are barred by issue preclusion.

Neither Judge Carter, nor the EEOC in its denial, however, addressed Lloyd's argument for equitable estoppel. Equitable estoppel focuses on the defendant's wrongful action preventing plaintiff from asserting his claim. Leong v. Potter, 347 F.3d 1117, 1123 (9th Cir. 2003). To assert equitable estoppel, plaintiff must satisfy a non-exhaustive list of factors, including: 1) the plaintiff's actual and reasonable reliance on defendant's conduct or representations; 2) evidence of the defendant's actual or constructive knowledge of the deceptive nature of its conduct; and 3) the extent to which the purposes of the limitation period have been satisfied. Santa Maria v. Pacific Bell, 202 F.3d 1170, 1176 (9th Cir. 2000). The Ninth Circuit Court of Appeals has held that equitable estoppel will apply against the government "where justice and fair play require it," but only after two additional elements are met beyond the traditional elements of equitable estoppel. Watkins v. United States Army, 875 F.2d 699, 706-707 (9th Cir. 1989)(internal citations omitted). A plaintiff must first establish affirmative misconduct going beyond mere negligence, and even then estoppel

Page 13 - OPINION AND ORDER

will only apply where the government's wrongful act will cause a serious injustice. Id. at 707.

### I. Affirmative misconduct

There is no single test for detecting the presence of affirmative misconduct; each case must be decided on its own particular facts and circumstances. Id. Affirmative misconduct does require an affirmative misrepresentation, but it does not require that the government intends to mislead a party. Id.

Here, defendants by their admission knew an EEO process existed and that plaintiff was required to abide by the exhaustion requirements. However, the letter from the USMS to AKAL stating CSOs had no appeal process was an affirmative misrepresentation, whether or not the agency intended to mislead plaintiff and other CSOs. See Plaintiff's Opposition to Federal Defendants' Motion to Dismiss or Motion for Summary Judgment, Appendices C and D.

### ii. Serious injustice

Plaintiff presents evidence that he did not know he could avail himself of the EEO process and thus detrimentally relied on the USMS communication. That reliance led plaintiff to join the Strolberg plaintiffs in exercising what he believed was his only avenue for appeal. See EEO Counseling Report #04-0059 at p. 3-4 (Defendants' Ex. 109). Without equitable estoppel, therefore,

plaintiff and other CSOs would suffer a serious injustice by losing all avenues to appeal their termination.

Thus, plaintiff meets the bar for asserting equitable estoppel against defendants.

### iii.  Traditional elements of equitable estoppel

As discussed above, plaintiff provides evidence to meet the first two elements of equitable estoppel: that he actually and reasonably relied on defendants' representation and that defendants had actual or constructive knowledge of the deceptive nature of their conduct.  I find plaintiff also meets the third element, the extent to which the purposes of the limitation period have been satisfied.

As plaintiff notes, the general purpose of exhaustion is to prevent premature interference with agency processes so that an agency may function efficiently, have an opportunity to correct its own errors, allow the parties and courts the benefit of its expertise, and compile a record adequate for judicial review. The Code of Federal Regulations applicable to Title VII of the Civil Rights Act and the Rehabilitation Act state that the 45-day time limit *shall* be extended where the individual was not notified of the time limit and was not otherwise aware of it. 29 C.F.R. § 1614.105 (emphasis added).  Here, the USMS ensured that the CSOs would not be aware of the time limit by declaratively informing them of their lack of access to an EEOC appeal process.

I find that the purposes of exhaustion have been accomplished, given the January 26, 2005 EEOC rejection and defendants' confirmation that the USMS has declined to extend the filing deadline. See Federal Defendants' Reply Memorandum, p. 4. I therefore find plaintiff has exhausted his administrative remedy, and civil action may commence.

## CONCLUSION

Defendants' Motion to Dismiss or in the Alternative for Summary Judgment (doc. 9) is granted in part and denied in part as follows: Defendants' Motion to Dismiss plaintiff's Rehabilitation Act claim is denied; Defendants' Motion to Dismiss plaintiff's due process claim based on res judicata is granted. IT IS SO ORDERED.

Dated this  15   day of February 2006.

                                  /s/ Ann Aiken
                                     Ann Aiken
                              United States District Judge